# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

UNITED STATES OF AMERICA, )
                                )
      v.                    )      **CASE NO. 1:04CR249**
                                  )
GREGORY C. KAPORDELIS,    )
                                  )
      Defendant.        )

## REPLY BRIEF TO GOVERNMENT'S
## RESPONSE TO DEFENDANT'S SUPPLEMENTAL
## BRIEF ON MOTION TO SUPPRESS

On August 22, 2005, the government filed its response to the Defendant's

Supplemental Brief on the Motion to Suppress (Doc. 146).  While the court had

asked the parties to brief simply the Fankhauser / Hernandez issues, the

government added additional issues in its response and the Defendant, therefore,

responds to those arguments, as well.

The Government claims that there is "*absolutely no evidence that the*

*Affiant's errors were intentional or that the mistakes were material.*" [Doc 146,

Page 20].  The defense disagrees; the omitted information was, in fact,

intentionally omitted.  Other errors, while not intentional, were certainly reckless.

One or two "errors" can be attributed to a mistake or oversight; three or four to

reckless disregard; five or six to intentional deception; seven or more to addiction. In the Defendant's initial Motion to Suppress, and in subsequent motions, evidence has been adequately presented to establish that the Affiant devoted his energy to advocating his position by presenting a skewed set of facts. The search warrant affidavit had over fifty material misrepresentations or omissions which have been exposed to date.

Materiality in the case of a search warrant affidavit concerns information the Magistrate *should have known* or *would have wanted to know* in order to objectively and fairly determine if probable cause exists. The key determinants in differentiating reckless misconduct from negligent misconduct are the *severity* and *frequency* of the transgressions. The defense has provided abundant evidence, virtually none of which has been challenged by the Government, that the Affiant should be held accountable despite his current effort to hide behind a façade of ignorance.

While this brief only refers to assertions made in the Government's response [Doc 146], the nexus argument can not be considered in a vacuum, absent consideration of the misconduct that existed in other aspects of the investigation. Good faith, objectivity and truthfulness (or a lack thereof) must be viewed based on the totality of the circumstances. Given: (1) the flagrant misconduct pertaining to the Russian investigation, (2) the continued effort by the Affiant to escape

accountability by claiming ignorance of the material information discovered during the New York arrest and search, and (3) the misrepresentations and fabrications that pertain to the interviews of Ms. Fankhauser and Ms. Hernandez – reckless disregard for the truth associated with pervasive bad faith are the only reasonable conclusions.

**1.  Issues pertaining to New York ICE Agents as they relate to the creation or negation of probable cause to search the Defendant's home and office.**

In its Response, the Government suggests that the Affiant was somehow unaware, prior to the issuance of the search warrant for the Defendant's home and office, of the Defendant's voluntary statement made in New York on April 12, 2004 when he was arrested.[1]  Moreover, the Government contends that the Affiant was equally ignorant of the fact that (1) Dr. Kapordelis was in possession of his laptop computer and two digital cameras when he landed; (2) Dr. Kapordelis' property was searched by both border agents during the border search and by ICE agents after the Defendant cleared secondary; (3) a specific search for child pornography by Agent Coleman was fruitless; and, (4) Dr. Kapordelis' property

---

[1] [Doc 146, Page 7] The Government contends: Agent Brant knew no such thing; he simply had been advised that Defendant was in custody and "was talking." (Doc 135-148).

was seized by ICE officers and could not have been in the Defendant's home or office.[2]

It is, however, undeniable that *the Affiant knew that Dr. Kapordelis' laptop computer and cameras were with the Defendant in Russia just three days earlier* and that they were extensively searched and found to contain NO pornography, NO contraband and NO evidence of criminal activity;[3]  The Affiant concedes that he spoke to ICE agents in New York and was aware that "the Defendant was in custody and was talking."  What the Affiant will not concede, however, is that he knew anything more than this.

The defense contends that the Government is asserting the Affiant's ignorance for one reason; it wishes to dismiss the infirmities in the search warrant application which resulted from the failure to reveal this material information to the U.S. Magistrate.  In fact, a pattern of "selective ignorance" during this investigation has unequivocally emerged and the Government insists that this ignorance (or assertions of ignorance) somehow magically relieves the Affiant of his responsibility to present an accurate and truthful affidavit.

---

[2] [Doc 146, Page 14] The Government similarly contends: Agent Brant submitted the warrant applications to the Magistrate early in the evening on April 12, 2004. (Id. at 122).  At that time, he was unaware that one of Defendant's computers (a laptop), along with a digital camera, had been seized by ICE agents in New York; he knew simply that Defendant was in custody and that he "was talking." (Id at 148, 150). Similarly, the fact that the New York ICE agents initially found no child pornography or other evidence directly supportive of the Russian molestation allegations did not reach Brant until a day or two later, after the warrants had been signed. (Id at 150)

[3] Defendant's Original Motion to Suppress, Exhibit A, Search warrant affidavit, Paragraph 36.

It is contrary to established law to conclude that because Agent Brant "did not know" this material information, the infirmity in the search warrant affidavit caused by "knowing", is somehow cured or negated. It is a matter of undisputed law that ALL information *known* to the ICE agents in New York is also constructively *known* to the Affiant. *United States v. Kennedy*, 131 F.3d 1371 (10th Cir. 1997); *United States v. Wapnik*, 60 F.3d 948 (2nd Cir. 1995); *United States v. DeLeon*, 979 F.2d 761 (9th Cir. 1992); *United States v. Pritchard*, 745 F.2d 1112 (7th Cir. 1984); *United States v. Hollis*, 254 F.3d 671 (8th Cir. 2001).

2. **The Government's assertion that the Defendant ceded his right to expect privacy regarding the search of his computer and property is not supported by facts or law.**

The Government claims that because the Defendant, according to Agent Coleman, gave consent to "briefly search his laptop computer" for pornography in New York, he somehow ceded his expectation that, once the specifically requested search had been completed, there would be any expected privacy in that computer, for all time, for all purposes.[4] This is not true; the Defendant had every

_____

[4] [Doc 146, Page 24] The Government argues: Additionally, as borne out by Agent Coleman's undisputed testimony, Defendant lacks any reasonable expectation of privacy in his New York computer and, therefore, has no standing to contest the validity of the search warrant for this computer. Also, [Doc 146, Page 25] Thus, even though the initial search by Agent Coleman was not nearly as thorough as the forensic examination later conducted by ICE agents, Defendant voluntarily gave up any reasonable expectation of privacy in that computer and, therefore, has no viable Fourth Amendment argument that the fruits of that search should be suppressed. Also,

expectation that his privacy would be restored once the search in question had taken place.  In fact, there is no disagreement regarding the *specific consent* which was authorized – *a brief consent to search the computer for pornography.*[5]  Agent Coleman confirmed that the limited search was *requested, authorized, conducted and completed.*[6]  As established in law, consent for a search is limited to that which is specifically authorized, whether in breadth or duration.  *See United States v. Blake*, 888 F.2d 795 (11th Cir. 1989); *United States v. Strickland*, 902 F.2d 937 (11th Cir. 1990); *United States v. Harris*, 928 F.2d 1113 (11th Cir. 1991).  "[I]t would seem that a consent to search may be said to be given upon the understanding that **the search will be conducted forthwith and that only a single search will be made**." LaFave, Search & Seizure, §8.1(c) (West, 3rd Ed. 1996).

Agent Coleman was very specific in his request for a *brief* search and Dr. Kapordelis was very specific in his consent to that request.  "Brief," in the context of time, has no meaning other than "of short duration."  Dr. Kapordelis' right to

---

[Doc 146, Page 21] Defendant no longer has any reasonable expectation of privacy in the contents of that computer so that a search warrant for that computer was not required.

[5] [Doc 146,Page 22]  After viewing the letter, Agent Coleman asked Defendant if there was any pornography on his computer to which Defendant responded, "Not that I'm aware of." (Id. at 162). Agent Coleman then asked, "Would you mind if I look through the computer for images, briefly?"  Defendant did not hesitate in saying, Yeah!, go ahead.

[6] [Doc 135, Page 171-173] Agent Coleman confirms that he asked to "briefly" examine the computer, that he searched for 10 or 15 minutes, that there was no pornography or evidence of criminal activity, that he turned the computer off, closed it, put it in the Defendant's bag and, most importantly, that all this was done in the presence of Dr. Kapordelis.  Agent Coleman confirms that he never asked to search the computer again or that he wanted consent to do a more thorough forensic search in the future.

privacy was never surrendered.  He simply consented to a brief search, in his presence, and was aware that the brief search was over because he witnessed the entire event, from beginning to end.  The Government's "for all time – for all purposes – for all places" argument[7]  mocks the Fourth Amendment.

## 3.  The search of Dr. Kapordelis' computer was not a border search and, therefore, the border search exception to the Fourth Amendment does not apply.

The defense contends that the search warrant for the Defendant's laptop computer and camera equipment was obtained under false pretenses because, among over fifty other facts, the Affiant did not reveal: (1) the limited consent search in New York, of that very computer, revealed no pornography of any kind; (2) Agent Lacy was aware that the same computer and the Defendant's digital cameras were forcibly searched by Russian police on April 8, 2004 *for over two hours* and also failed to yield any pornography, contraband or evidence of criminal activity; (3) the laptop computer and cameras were not in defendant's home or office, absent a physics-defying feat of magic by which they were transported to Gainesville, Georgia from St. Petersburg, Russia.

---

[7] [Doc 146, Page 25]:  The Government argued:  "In essence, Defendant laid open his computer and gave Agent Coleman carte blanche to review anything the Agent cared to review. Defendants bare-all attitude with respect to his computer vitiates any reasonable expectation of privacy he may have had with respect to files on his computer."

Now the Government argues that the search of the computer and equipment should fall under the protection of the Border Search Exception to the Fourth Amendment.[8]  As argued in a separate pleading, the search of Dr. Kapordelis' computer and computer equipment was not a border search and it was specifically for this reason that federal agents filed a search warrant application.

The following facts are undisputed: (1) It was established at the July 5, 2005 hearing that the Defendant cleared customs prior the search in question;[9]  (2) the search warrant for this laptop computer and computer equipment was obtained five weeks after the Defendant's arrest; (3) at the time of the search, the computer, digital cameras and digital media were in Atlanta, Georgia, far away from any border; (4) at the time of the search, the computer, digital cameras and digital media were in control of the ICE case agent who was investigating the crime; not a border patrol agent who was policing or protecting the border.

---

[8] [Doc 146, Page 24]  In the Government's Response to Defendants Motion to Suppress Evidence (Doc 121), the Government argued that it did not need a search warrant to search the New York laptop computer because it was a valid search under the border search exception.

[9] [Doc 135, Page 173-174] Page 173, Line 19 - Samuel: "Do you think you went to Manhattan first and then to Brooklyn?  Is that possible, in your order of….  Coleman: No.  We processed him out at JFK airport.  Samuel: He clears customs at JFK and then you bring him to another….  Coleman: Another building at JFK to process him there… Right."   Page 174, Line 6 - Samuel: "So you clear customs, you get through customs and then you go to the jail, where you leave him?"  Coleman: Yes."

The Government's "belt and suspenders" argument,[10] while cute, fails to address the fact that it was not until the belt was breaking that the Government desperately reached for the suspenders which had, to that point, never been mentioned in any document or in the affidavit. There was not even a hint in the warrant application that the search was being considered as an extended border search.

It should be noted that Agent Coleman was specifically invited to address the Court in order to determine if the search of the Defendant's property would qualify as a border search. During the July 5, 2005 hearing, the Prosecution questioned Agent Coleman but *did not* establish (or even attempt to establish) the searches of the computer, disk drive and camera (five weeks later) in Atlanta were part of a border search. If the issue was not worthy of exploration at the hearing, it should not merit theoretical or conjectural discussion.

## 4.  The search of the Defendant's laptop was not a "search incident to arrest."

Once again, the Government errs in its assertion that the search of Dr. Kapordelis' computer, five weeks after a fruitless and limited consent search, was a search incident to arrest. *See U.S. v. Khoury*, 901 F.2d 948 (11th Cir. 1990). A

---

[10] In the Government's response to the Defendant's Motion to Suppress, it argues: "Because the search warrant was an unnecessary "belt and suspenders" approach to searching the Defendant's computer, Defendant's motion to suppress the search warrant for the evidence seized in New York must be denied." [Doc 121, Page 7]

search incident to arrest must occur, as the doctrine states, "incident to arrest," not a month later or hundreds of miles from the location of the arrest (and, for that matter, eighty miles away from the defendant – who was in Gainesville, Georgia). The purpose of a search incident to arrest is to prevent concealment and destruction of evidence and to assure officer safety. *Chimel v. California*, 395 U.S. 752 (1969). None of these concerns support a search of the Defendant's computer, computer media and camera equipment in this case. *U.S. v. $639,558*, 955 F.2d 712 (D.C. Cir. 1992); *U.S. v. Johnson*, 16 F.3d 69 (5th Cir. 1994); *U.S. v. Vasey*, 834 F.2d 782 (9th Cir. 1994); *U.S. v. Bonitz*, 826 F.2d 954 (10th Cir. 1987).

**5.  The focus of the search warrant is established by the affidavit and not, as the Government asserts, by the Defendant's attempt to "shift the court's focus."**

The Government claims that "*the Defendant is 'suddenly, at this rather late juncture' asserting that the prosecution "is somehow about his possession of illegally downloaded child pornography, as opposed to child pornography that he produced as he photographed himself molesting his own victims.*" Moreover, the Government adds that "*This focus is odd given that the central allegations in the search warrant affidavits related to Defendant's molestations of boys and photographs of them, not possession of child pornography.*" [Doc 146, Page 5]

The search warrant affidavit speaks for itself and provides direct evidence that *the search,* was virtually exclusively about the production and possession of child pornography or about computers and the use of computers and the internet by child pornographers, distributors and collectors; while the investigation did not support this search in any way. This "odd focus" is made clear by the Affiant's inclusion of a two page definition pertaining specifically to child pornography collectors and their habits. In short, the search *was* all about child pornography on the computer. The defendant did not invent the purpose of the search, or write the search warrant application. The government did.

In the Defendant's Suppression Motion, he pointed out that the Affiant was obsessed with the notion that Dr. Kapordelis was a "child pornography collector" as was made evident by the boilerplate list of items to be searched for and seized. The Defendant also noted that the Affiant was so preoccupied with his desire to create a carte blanch opportunity to rummage through the Defendant's home and computers for child pornography, that he failed to establish any evidence to support his central premise – that Dr. Kapordelis was a child pornography manufacturer or collector. Absent this probable cause, the Defendant claimed, and still claims, that there was no nexus to search his home, office or computers. This "odd narrow focus" cannot be and should not be attributed to the Defendant when it belongs – lock, stock and barrel – to the Affiant.

In the investigative section of the search warrant affidavit, where probable cause is supposed to be established to support the basis for the search warrant and the nexus connecting the alleged crimes to the place to be searched and items to be seized, child pornography is never claimed and the word child pornography never appears. This is the key to the problem that the defendant contends vitiates the existence of any probable cause to search the house. The government is right – exactly right – that the focus in the investigative section of the brief was about certain alleged incidents of child molestation in St. Petersburg, Russia. And it is exactly because that was the focus of the investigation, that the defense contends that there was no probable cause to search for child pornography on the computer in Gainesville, Georgia. Now, the government protests that it is the *defendant* who is changing the focus of the inquiry!

The few places in the search warrant that do reference anything to do with pictures are deceptively presented, when compared to the facts that supposedly support the allegation. It is clear that the bogus words attributed to the confidential informant, "sexually molested, videotaped and photographed," were juxtaposed by the Affiant so that the Magistrate would assume that the visual images pertained to child pornography. While clever, the Affiant's deceptive play on words has been thoroughly negated: (1) there was no basis for the allegations; (2) the informant himself was not credible; and, (3) the information was not corroborated by physical

evidence and, in fact, was actually refuted after two fruitless searches of the Defendant's computer.

Other assertions by the Government, presented below, are equally disingenuous:

    a) *"The central nexus between the crimes Defendant committed in Russia and his residence was technological: computers and digital camera equipment. Several of the juvenile victims from St. Petersburg told Russian authorities that Defendant photographed them and later showed them the pictures on his computer. (Search Warrant Affidavit, ¶ 18, 30, 32). Thus, any information tending to show that Defendant had any such equipment, computers or digital cameras -- in his house would be particularly compelling support for the proposed search warrant." [Doc 146, Page 18]*

    b) *"In the present case there was significant evidence set forth in the affidavit (i.e., the allegations of the Russian victims) that Defendant manufactured child pornography by taping kids in the shower and when molesting them." [Doc 146, Page 18]*

The claim that computers and digital camera equipment represent the "central nexus" is not supported by probable cause for several reasons: (1) There was *no* claim by *any* juvenile that he was photographed or videotaped while allegedly

being molested, yet the prosecution blatantly misstates the truth in its pleading and, worse, now claims – without a shred of support – that "more than one victim" made this allegation when, in fact, none did; (2) "Several juvenile victims" <u>did not</u> claim that they were photographed and later shown their pictures on the computer. That new allegation finds its genesis only in the prosecutor's imagination, for there is not a single report or interview that supports this claim.

In fact, even the references in the search warrant affidavit cited by the Government in its brief (¶18, 30, 32 of the Search Warrant Affidavit) refer either to Juvenile-D only or the bogus confidential informant and *not* to the other two alleged victims of molestation (A and C), both of whom have admitted that they were not molested at all but forced by the Russian police to lie to the American agents; (3) *significant evidence was <u>not</u> set forth* in the affidavit that Defendant produced photographs of his molestation victims; in fact, the two searches of the Defendant's computers  and camera equipment, specifically for pornography, contraband, or evidence of criminal activity, were entirely fruitless.

To reiterate this important material issue for clarity:

- The confidential informant (now known to be Andrei Lapov) is bogus and his claims are bogus; even if one were to assume that he was as credible and his claims had some sort of foundation, *the affidavit never asserted child pornography production, collection or possession but only implied it.*  In

14

addition, there was never any corroboration offered to support this claim and two computer searches refuted it.

- Juvenile-A and Juvenile-C never mentioned any computer or any photographs in any "pre-arrest/search" interview and they never described pornography in any form or fashion; most important, *the affidavit never stated, suggested or hinted that they had*.

How is it, using the requisite standard of good faith, that the prosecution can proffer in a pleading that "several victims" reported being photographed and having viewed the photographs on the computer or that victims reported being videotaped when they were molested, when these facts were not known to be true and even Agent Brant's affidavit never made these assertions?

The defense contends that it was the Affiant's determination to fabricate a nexus to the Defendant's home which led him, purposefully and recklessly, to produce his own allegation that the Defendant was a child pornography collector/manufacturer even though the evidence did not support this allegation. This objective drove the Affiant to proffer a bogus Russian informant and the "shower picture" of Juvenile-D which did not exist.

The Affiant furthered his goal by concealing or misrepresenting statements obtained from two of Dr. Kapordelis' colleagues in Gainesville, Georgia, Ms. Fankhauser and Ms. Hernandez.  The July 5, 2005 hearing revealed that the

following information, obtained during those interviews, was concealed or misrepresented: (1) The existence of pornography was denied and yet this was not included anywhere in the affidavit; (2) the existence of blue and white pills was denied and yet this was also concealed from the magistrates; (3) improper behavior with juveniles was denied by the employees but the affidavit was misrepresented to imply the opposite; (4) the proffer of Russian children having visited the Defendant's home was an outright fabrication; (5) "routine visits by children" was a misrepresentation of Ms. Fankhauser's comment that Vasek, "a 17-18 year-old boy" would visit Dr. Kapordelis on and off, all the time.[11]  While Vasek may be a "boy," he is not a minor, not a child and he certainly does not qualify as either "children routinely visiting" or "minor children visiting without their parents."

In addition to these examples of misrepresentations and omissions, the Affiant was relentless in his efforts to affirm that the two employees had seen "any computer" and "any digital camera" in the Defendant's home, at some point in time.  Based on testimony provided by Agent Brant at the hearing, he was only interested in whether there was a computer or camera in the house and not in any

---

[11] Vasek is Dr. Eva Racanska's brother who is now 23 years old.  The Racanska family, including both parents and grandparents, have visited Dr. Kapordelis in the United States and at his home in South Africa.  Dr. Kapordelis has visited their family home in the Czech Republic at least forty times.  The Racanska family is, simply, "like family" to Dr. Kapordelis.

evidence of pornography or contraband on the computer or digital cameras.[12]  If

the Defendant in fact were shown to be a child pornography

collector/manufacturer, the possession of a generic computer in the Defendant's

home might have, arguably, supported the license to rummage which Agent Brant

sought. Such, however, was not the case.

The Government asserts in its Response that, *"Defendant, in his brief,*

*endeavors to shift the Court's focus away from the central question of whether the*

*information from Fankhauser and Hernandez provided a sufficient link between*

*his Russian activities and evidence that might be found in his home and towards*

*the narrow issue of whether Defendant's home computer(s) would contain child*

*pornography."* [Doc 146, Page 17]  Appendix #1 provides a synopsis of the search

warrant affidavit authored by Agent Brant.  This attachment demonstrates that

child pornography was the driving force behind the entire search warrant

application and, clearly, the Defendant had no part in drafting this document.

To restate what the Defendant claimed in the original Suppression Motion,

*"The affidavit utterly fails in the effort to portage from allegations of child*

*molestation in Russia to probable cause to search computers for child*

---

[12] According to Brant's testimony: 'The objective of the search warrant affidavit is
just to prove that there is a computer inside the house.  That is laid out in the affidavit,
that they both saw a computer inside the house; whether or not Kapordelis turned it
on and showed them pictures, to me, is irrelevant.' (Doc 135- 142)

*pornography in the United States.*[13]  This statement is no less true today than it was seven months ago; in fact, it is truer now that Mr. Lapov has been exposed as the confidential informant.

The Government claims that there was probable cause established in the affidavit to search the Defendant's home and office for evidence of Defendant's Russian and domestic crimes.  *[Doc 146, Page 17]*  This is odd given that there were no allegations of domestic crimes and certainly no proffer of domestic crimes in the affidavit, other than by innuendo or misrepresentation.

There was no reference in the search warrant affidavit to searching for or seizing any non-pornographic photographs of any kind, only child pornography.

Travel documents, diaries and notebooks related to Defendant's criminal conduct were never claimed to exist at all, much less to exist in the Defendant's home or office, or to exist on the computer, assuming a computer was even located in the house.

The Fourth Amendment protects "the right of the people to be secure in their houses," and it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people."  *Minnesota v. Carter*, 525 U.S. 83, 99 (1998) (Kennedy, J., concurring).  "This Court has characterized that right as 'basic to a free society.'  And over the years the Court consistently has been most

---

[13] [Doc 93] Defendant's Original Motion to Suppress, Page 100

protective of the privacy of the dwelling."  *Wyman v. James*, 400 U.S. 309, 316 (1971) (quoting *Wolf v. Colorado*, 338 U.S. 25, 27 (1949)).  "The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance."  *Johnson v. United States*, 333 U.S. 10, 13-14 (1948).  The mere conjectural possibility – the sheer speculation – that perhaps, maybe, that might be a travel document somewhere; that there might be an itinerary somewhere, that there might be some evidence, somewhere – is not a sufficient basis to authorize a search of a home and the seizure of any computer that might possibly be found therein.

**6.  The Defendant's portrayal as someone with an overt, active, and acute interest in young children was a misrepresentation by the Affiant as he misrepresented the information provided during the interviews of Ms. Fankhauser and Ms. Hernandez.**

The Government argues that:  *"Defendant, as described by his own colleagues, fits Hay's profile. As detailed above, both Fankhauser and Hernandez explained that Defendant was known to house young boys from other countries and that he was active in groups such as Young Life." (Doc 135-69)* [Doc 146, Page 19].

The prosecution continues to make the same false assertions which were initially presented in the affidavit, but which were never claimed by the witnesses: "young" boys and "active in groups such as Young Life", in an effort to mischaracterize Dr. Kapordelis like that of the defendant in Hay.  It was the Affiant who turned a one-week-per-year Young Life volunteer assignment, which the defendant last attended in the year 2000, into an ACTIVE or contemporaneous involvement with Young Life and various camps in North Georgia.  Why was the truth misrepresented here?  More important, why is it that the one "boy" who was actually identified as visiting Dr. Kapordelis, 18 year old Vasek Racanska, was not listed in the affidavit at all yet "unidentified young children" of "unspecified young ages" were presented instead?  *It is apparent that the affiant intended to misrepresent the truth by converting adult boys into children; children into young children; and young children into young children without guardians or parents.*

The fact of the matter is that there were no references in the affidavit to ages or visits by families (which may have included children) because the actual ages and the presence of families were not supportive of the affiant's characterization of Dr. Kapordelis.

20

## APPENDIX A
## SYNOPSIS OF THE SEARCH WARRANT AFFIDAVIT

Paragraph 1: Agent Brant's expertise in working on child pornography cases, executing warrants for child pornography cases.

Paragraph 2: Agent Brant's desire to search the premises, computers or computer media.

Paragraph 3: Acknowledges that Agent Brant's information comes from his training, experience and from Agents in Russia.

Paragraph 4 and *Attachment B - Items to be seized*:  Deals with the items to be searched for, based on probable cause; specifically, *fruits pertaining to Title 18, USC Section 2256 (child pornography)*.  Subparagraph content is as follows:

a) Child pornography

b) Child pornography

c) Envelopes, letters, receipts, travel documents, travel itineraries and other correspondence pertaining to Title 18, 2423.

d) Child pornography

e) Child pornography

f) Child pornography

g) Child pornography

h) Child pornography

i) Child pornography

j) Child pornography

k) Child pornography

l) Child pornography

m) Child pornography

n) Child pornography

o) Child pornography

p) Records of ownership of premises

q) Records of ownership of computers

r)  Capsules, pills or                    in sexually explicit
    medicines used to engage              conduct.

## *Definitions section (Bates Page 22)*

Paragraph 5:  Defines computer

Paragraph 6:  Boiler plate list defining records, documents and materials.

Paragraph 7:  Computers and computer software dealing with child
pornography

Paragraph 8:  Computers regarding child pornography collectors and
pornographers.

Paragraph 9:  Child pornography producers

Paragraph 10: Child pornography collectors

Paragraph 11: Child pornography distributors

Paragraph 12: Child pornography trafficking using IRC.

Paragraph 13: Child pornography collectors in communication

Paragraph 14: Child pornography production and distribution

Paragraph 15: Child pornography and computer storage media

Paragraph 16: CHILD PORNOGRAPHY COLLECTOR
CHARACTERISTICS

(Includes two pages of boiler plate material in sub paragraphs *a
through e.)*

## *Investigative section (Bates 30)*

1.  Allegations of sexual molestation by three juveniles.

2.  No mention by any juvenile that he was photographed during any alleged
    molestation.

3. No mention by any juvenile of any pornography being seen, possessed or produced.

4. No mention by any juvenile of any photographs being taken except for misstated reference to a shower video with Juvenile-D.  No such photos were found during the two searches of the laptop computer

5. No mention of any documentation involving sex tourism or documents related to sex tourism.

6. The two searches of computers and cameras, specifically for child pornography or evidence of criminal activity, both of which were fruitless, were not mentioned in the affidavit.

7. The words child pornography or pornography production did not appear.

8. The term child pornography collector, producer or distributor did not appear.

9. The denial from Dr. Kapordelis' colleagues of the existence of child pornography was not mentioned.

10. No acknowledgment that the twice searched laptop was seized by ICE agents in New York.

11. No acknowledgement that Dr. Kapordelis' colleagues provided no corroborating information relating to the charged criminal conduct.

# CONCLUSION

For the foregoing reasons, and for the various reasons cited in several previous briefs, the defendant urges the court to grant the motion to suppress.

RESPECTFULLY SUBMITTED,

_____
DONALD F. SAMUEL
Ga. State Bar No. 624475

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, NE
Atlanta, Georgia  30305
404-262-2225
dfs@gsllaw.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:04CR249** |
| | ) | |
| **GREGORY C. KAPORDELIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing

*Reply Brief to Government's Response to Defendant's Supplemental Brief on*

*Motion to Suppress* upon Aaron Danzig, Assistant United States Attorney by

electronic mailing.

This 30th day of August, 2005.

_____

DONALD F. SAMUEL