IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:04-CR-249-CAP |
| GREGORY C. KAPORDELIS | : | |

UNITED STATES' RESPONSE TO DEFENDANT'S
OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION
<u>REGARDING SEARCH INCIDENT TO ARREST AND BORDER SEARCH</u>

COMES NOW the United States of America, by David E. Nahmias, United States Attorney, and Aaron M. Danzig and Robert C. McBurney, Assistant United States Attorneys, and files this Response to Defendant's Objections to the Magistrate's Report and Recommendation Regarding Search Incident to Arrest and Border Search.

I.   <u>Introduction</u>

Defendant was arrested by ICE agents at JFK Airport in New York on April 12, 2004, upon his return from Russia. He had in his possession, among other things, a laptop computer ("New York laptop"). The ICE agents seized the computer, sent it to a technical facility, and searched its contents. Magistrate Brill correctly ruled that this warrantless search was justified (1) because it was a search incident to arrest, such that Defendant had no reasonable expectation of privacy in the contents of the laptop and (2) because of the Border Search exception to the search

warrant requirement.  The Government's additional effort to obtain a search warrant for this computer was thus an unnecessary "belt and suspenders" approach.[1]

On July 5, 2005, the Magistrate Court held an evidentiary hearing on the facts surrounding Defendant's arrest in New York and his offer to show information on his computer to the arresting agents.  Defendant does not contest the facts as described by Magistrate, but instead objects only to the legal conclusions drawn by the Magistrate.  (Defendant's Brief, Doc. 180, at p. 2).

II. <u>The Magistrate Court Correctly Found that the Search of the New York Laptop Was a Valid Search Incident to Arrest Where Defendant Voluntarily Relinquished Any Reasonable Expectation of Privacy in the Computer</u>

Defendant complains that the Magistrate provides a "disingenuous assertion that the Defendant's [sic] lost his expectation of privacy in everything contained on his personal laptop because the agents had the foresight, luck or legal acumen to power-on the unit immediately after consummating his arrest." (Defendant's Brief, Doc. 180, at p. 9).  The facts suggest otherwise.  The unrebutted testimony of the arresting agent was

---

[1] The Magistrate Court also correctly ruled that all of the search warrants obtained by the Government were valid and that evidence seized from these searches should not be suppressed.  This brief only addresses the search incident to arrest and border search issues.  The Government is filing another short brief in response to Defendant's 152-page objection to the Magistrate's order on the validity of the search warrants.

that it was the <u>Defendant</u> who offered to power-on his computer and show it to the agents. (Magistrate's Report at p. 4; July 5, 2005 hearing transcript ("T"), Doc. 135 at p. 161). Defendant further imposed no limitation on which files the agents could view; they were apparently free to view anything on Defendant's computer. (T-162-63). Not a single file was password protected, and Defendant never told the agents to stay away from certain files or to stop looking at the computer altogether. (T-163, 165). With these facts understood, it is the Defendant's assertion that he retained a reasonable expectation of privacy in the New York laptop that appears to be disingenuous.

As the Magistrate Court correctly noted, it is hornbook law that, pursuant to a lawful arrest, agents may, without a warrant, conduct a full search of the arrestee, and a more limited search of his surrounding area. (Magistrate's Report at p. 8). The Magistrate also correctly explained that agents may search the <u>entire contents</u> of an arrested person's electronic pager, wallet, address book and briefcase that the arrested person possessed at the time of the arrest. (Magistrate's Report at p. 9).

The Magistrate cited several analogous cases supporting her recommendation that Defendant's motion to suppress be denied. <u>United States v. Holzman</u>, 871 F.2d 1496 (9th Cir. 1989), <u>overruled on other grounds</u>, <u>Horton v. California</u>, 496 U.S. 128, 110 S.Ct.

2301 (1990), specifically addresses the situation in which a defendant's expectation of privacy in an item is extinguished by a valid search incident to arrest.  In Holzman, police seized an address book when defendant was arrested and examined it.  The Ninth Circuit held that a subsequent and more thorough examination of that same address book without a warrant was proper because "Holzman could no longer reasonably expect that the contents of the book would be free from further examination by the officers." Holzman, 871 F.2d at 1505.  See also United States v. Johnson, 820 F.2d 1065, 1072 (9th Cir. 1987) ("once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of police, may be conducted without a warrant"); United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir. 1983) (cursory search of purse when defendant arrested, subsequent more thorough search without warrant valid).

In the present case, the Magistrate noted that Defendant's expectation of privacy is perhaps even more diminished than Holzman's because "Defendant himself disclosed to the agents that the computer had material evidence relating to his stay in Russia," and because "Defendant did not unequivocally deny that he had pornography on his laptop."  (Magistrate's Report at p. 11). Moreover, the Defendant was present when the ICE agent in New York,

fully aware of the charges against Defendant (having just arrested him), reviewed the New York laptop and found many digital photos of boys.  Any reasonable defendant, freshly arrested for child exploitation offenses, would have expected that police would have followed up on the contents of his computer.  Indeed, Defendant acknowledges that the extent of the search of the address book in Holzman logically leads to the Magistrate's ruling that Defendant Kapordelis no longer retained any privacy interest in his computer. (Defendant's Brief, Doc. 180, at 6).[2]

In objecting to the Magistrate's ruling, Defendant cites to United States v. Khoury, 901 F.2d 948, 957 (11th Cir. 1990), and Brett v. United States, 412 F.2d 401 (5th Cir. 1969).  These cases, however, are distinguishable.  In Khoury, officers searched property belonging to the defendant after it had been seized as part of a vehicle inventory.  In Brett, officers searched the defendant prisoner's clothing that had been retained solely for safekeeping.  In both cases, property was initially seized for administrative, as opposed to investigative purposes.  In neither case did the defendants freely offer up the items for law

---

[2] In addition to Holzman, the Magistrate relied on a litany of cases supporting the proposition that Defendant relinquished a reasonable expectation of privacy in the laptop computer. See Magistrate's Report at p. 12.  Tellingly, Defendant does not attempt to distinguish these cases.

enforcement inspection.  Rather, the items seized in <u>Khoury</u> and <u>Brett</u> were maintained solely for safekeeping without any indication that they were likely to be reviewed for evidentiary value.  As Defendant correctly notes, it was the investigative search following an inventory search (<u>Khoury</u>) or safekeeping by the prison warden (<u>Brett</u>) that generated the Constitutional harm. (<u>See</u> Defendant's Brief, Doc. 180, at pp. 8-9).  Since neither occurred here, the Magistrate correctly ruled that the agents could lawfully search the computer seized in New York without a warrant.

    III.  <u>The Magistrate Court Correctly Found that the Search of the New York Laptop Was Valid as a Border Search</u>

In addition to correctly ruling that the search of the New York laptop was justifiable as a search incident to arrest, the Magistrate also correctly held that the search was justifiable as a border search.  While Defendant has objected to this conclusion as well, there is no objection to the well-settled law in this area.  Routine searches at a border require no justification, and computers may be searched as part of a routine border search. (Magistrate's Report at p. 13).  Additionally, border searches are legitimate not only at the physical boundaries of the nation but also at the "functional equivalent" of a border.  (Magistrate's Report at p. 15).

The Magistrate set out the applicable standard for determining

whether the search of the New York laptop in Atlanta was proper under the "functional equivalent of the border" search doctrine, and found that it was allowable, satisfying all three prongs of the relevant test.  See United States v. Hill, 939 F.2d 934, 937 (11th Cir. 1991).  Defendant does not dispute the first factor of this test, that the border was crossed when Defendant flew from Russia to the United States.

The second prong is that there was no opportunity for the object of the search to have changed materially since the crossing. Hill, 939 F.2d at 937.  While there is no factual dispute that the computer, the object of the search, was not changed from the time ICE agents took possession of it in New York to when it was reviewed in Atlanta, Defendant claims that the issue here should be whether the Defendant, not the ICE agents, had the opportunity to change the computer since crossing the border. (Defendant's Brief, Doc. 180, at p. 17 and n. 3, 4.)  In support of this claim, Defendant asks the Court to rely on United States v. Santiago, 837 F.2d 1545, 1548 (11th Cir. 1988), in which the defendants themselves had no opportunity to change the items that were searched because they were under constant surveillance.

However, Defendant reads into Santiago a requirement – that the item be under constant surveillance – that is not present in the case law.  In United States v. Richards, 638 F.2d 765 (5th Cir.

-7-

1981),[3] a package shipped into the United States and addressed to a post office box in Miami was stopped at the Foreign Mail Center in New York.  The package was opened and heroin was found.  The package was then resealed and sent to Miami in a locked pouch, where it was delivered to defendant's post office box.  When defendant claimed the package, he was arrested and the package was taken to the police station and reopened, without a warrant.  As the Richards case aptly shows, the second prong of the Hill analysis does not require that the item to be searched remain in the possession of the defendant.  It is still a valid border search if the item is held by government agents or pursuant to a customs bond, transported to a different location and then searched.  See Magistrate's Report at p. 17, citing numerous cases.  Thus, Defendant's objection to the Magistrate's ruling that the second prong of the extended border search is satisfied because the computer, in ICE custody, did not change since the time Defendant entered the United States with it is without merit.

Further, the Magistrate ruled, under the third prong of the extended border search analysis, that the New York laptop was searched at the first realistic locale, bearing in mind principles of reasonableness and practicality.  (Magistrate's Report at p.

---

[3] Richards is binding law in this Circuit, pursuant to Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

16). As the Magistrate observed, the notion of first opportunity turns in part on whether the condition of the property would change and whether the search takes place at the ultimate destination of the property.[4] (Magistrate's Report at p. 17). The Magistrate acknowledged that the Atlanta-based search of the New York laptop occurred several weeks after its seizure and that, as time passes and the place of the ultimate search moves further from the border, the border search exception can be fatally attenuated. (Magistrate's Report at p. 18).

However, in this case, such remoteness in time and space did not transform the border search into an illegal warrantless search because the Defendant had already been arrested and had lost his possessory interest in the laptop computer.[5] (Magistrate's Report at p. 19). Thus, according to the Magistrate, the Government

---

[4] Defense attempts to distinguish cases where mail is searched from, according to Defendant, the more intrusive instances when a person's personal property or luggage is searched. However, Richards makes clear that mail and personal luggage are treated the same for purposes of border search analysis. Richards, 638 F.2d at 772 ("There appears to be no sound reason to distinguish between incoming mail and other property that crosses our border. Affixing a postage stamp to a parcel should not grant it immunity that would not be accorded a package carried by a traveler.").

[5] Additionally, as noted above, Defendant had already lost his expectation of privacy in the New York laptop based on his offer to show documents from the computer to the agents and his consent to let the agents peruse any of the contents of the computer, without restriction.

properly searched the New York laptop in Atlanta by way of the "functional equivalent to the border" search doctrine.

While not saying it explicitly, the Magistrate's ruling can also been seen as justifying the search of the New York laptop in Atlanta as a continuation of the original New York border search rather than a functional equivalent of a border search. The Magistrate alludes to this in the description of United States v. Irving, 2003 WL 22127913, *4-5 (S.D.N.Y. 2003) (unreported), and Defendant's failure to address this case is most telling. The Magistrate summarizes Irving on page 20 of her Report and Recommendation. The Magistrate then concludes:

> While not directly on point, Irving supports the conclusion that the rationale for the border search of defendant's laptop computer, i.e., preventing pornographic images on the computer from entering the United States, was valid and existed even after the computer was transported to Atlanta. Irving also stands for the proposition that any delay and inconvenience caused by separating defendant from his computer and inspecting its contents was part of a routine border search that required no suspicion.

(Magistrate's Report at p. 21 (emphasis added)). The instant case mirrors Irving in that an item – a computer here, a camera with film in Irving – was lawfully seized at the border but not immediately searched. Nonetheless, the later search of the camera (i.e., getting the film developed) was proper under the border search exception even absent reasonable suspicion to conduct the

-10-

search.[6]  Irving, 2003 WL 22127913 at *5.  As the court in Irving noted:

> Indeed, any other decision effectively would allow individuals to render graphic contraband, such as child pornography, largely immune to border search simply by scanning images onto a computer disk before arriving at the border.

Id.; see also United States v. Roberts, 86 F.Supp. 2d 678, 688-89 (S.D.Tex. 2000) (listing various courts that have analogized searches of computer files and hard drives to routine border searches of an individual's closed containers and closed personal effects).  Of course, in this case, the realities of digital media and high-capacity storage devices mean that a cursory search at a border entry facility can no longer suffice; a more extensive review is necessary to locate and/or access concealed data, which is why it was necessary to send the New York laptop to Atlanta, the final destination for Defendant, to continue the border search. Additionally, the agent with the greatest knowledge of the case was here in Atlanta, making it even more appropriate to shift the search south to Atlanta.

Accordingly, the Court should adopt Magistrate Brill's Final Report and Recommendation denying Defendant's motion to suppress

---

[6] Of course, the ICE agents in this case had far more than reasonable suspicion; they had probable cause and an arrest warrant.

and finding that the search of the laptop computer seized in New York was justified as both a search incident to arrest and pursuant to the Border Search doctrine.

This 9th day of February, 2006.

          Respectfully submitted,

          DAVID E. NAHMIAS
          UNITED STATES ATTORNEY

              */s/ Aaron M. Danzig*

          AARON M. DANZIG
          ASSISTANT UNITED STATES ATTORNEY
          Georgia Bar No. 205151

              */s/ Robert C. McBurney*

          ROBERT C. McBURNEY
          ASSISTANT UNITED STATES ATTORNEY
          Georgia Bar No. 481070

          600 U.S. Courthouse
          75 Spring St., S.W.
          Atlanta, GA  30303
          (404)581-6012
          (404)581- 6181 (Fax)

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by electronic delivery:

>Donald F. Samuel, Esq.
>W. Charles Lea, Esq.
>Garland, Samuel & Loeb, P.C.
>3151 Maple Drive, NE
>Atlanta, Georgia 30305

This 9th day of February, 2006.

>_/s/ Aaron M. Danzig_
>AARON M. DANZIG
>ASSISTANT UNITED STATES ATTORNEY