IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:04-CR-249-CAP |
| GREGORY C. KAPORDELIS | : | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO RECONSIDER BOND

COMES NOW the UNITED STATES OF AMERICA, through its counsel David E. Nahmias, United States Attorney, and Aaron M. Danzig and Robert C. McBurney, Assistant United States Attorneys, and files this response to Defendant's Motion to Reconsider Bond.

I.   Background/First Violation

Defendant Kapordelis was arrested on a warrant for child sex crimes on April 12, 2004, in the Eastern District of New York.  The Government moved for detention, but on April 16, 2004, the magistrate judge in New York released Defendant on a $500,000 bond with numerous restrictions, to include the limitation that defendant have no contact with minors.

On April 20, 2004, after returning to the Northern District of Georgia, Defendant had another bail hearing.  (Doc 2).  Magistrate Judge Baverman allowed Defendant to continue on bond, again with numerous restrictions, including that Defendant have "no contact,

direct or indirect, with any person under the age of 18 years," and that Defendant not use "any electronic device to access or use the Internet."  (Id.).

On July 22, 2004, Magistrate Judge Baverman revoked Defendant's bond after Defendant willfully violated the terms and conditions of that bond by contacting juvenile boys in the Czech Republic.  (Doc 40).  Judge Baverman ruled:

> After hearing evidence and argument of counsel, the Court still concludes that there is clear and convincing evidence that the defendant knowingly violated the conditions of his pretrial release by contacting via telephone various witnesses, some of whom were minors, residing in the Czech Republic.[1]

(Id. at 1).  Defendant's defense to this violation was that, while he did commit the infraction, he did not intend to engage in improper conduct.  (Doc 77-2-3).

Judge Baverman initially ordered that Defendant be remanded to the custody of the U.S. Marshal's Service and then considered releasing Defendant to Dismas House.  Dismas House, however, would not accept Defendant due to the nature of the charges against him. Therefore, on August 12, 2004, Magistrate Judge Baverman issued a new order outlining more stringent conditions of release that would

---

[1] As shown in the attachment to the Government's Response to Defendant's December 2005 Motion to Modify Bond Conditions, Defendant has previously traveled to the Czech Republic and molested many juvenile boys there.  (Doc 171).

-2-

allow Defendant to remain in his home instead of being sent to Dismas House.  (Doc 55).  Per Judge Baverman's order, Defendant was placed on full-time home confinement, with travel permitted only to Court, to his attorney's office, to meetings with his pretrial services officer, and/or to the hospital for medical emergencies. (<u>Id.</u> at ¶ 8).

II.  <u>Defendant's Second Violation of Bond</u>

Despite being given a second chance in August 2004, Defendant has willfully violated the conditions of his bond again.  This time, instead of contacting boys in the Czech Republic, Defendant drove out of his way to the small town of Lula, Georgia, where another of his molestation victims resides.  As the victim testified (and as Defendant himself acknowledged during his post-ruling plea for mercy), Defendant is quite familiar with the area where he was found, having picked up the victim at his high school on the corner of Old Cornelia Highway and East Hall Road many times, each time driving the victim either north on Old Cornelia Highway to the victim's own house or south on the same road to Defendant's residence.  Thus, even assuming that Defendant really did leave the highway one exit early in order to avoid traffic, when he ended up at the victim's high school, he made a choice:

instead of turning south on Old Cornelia Highway to go home,[2] a road he had frequented many times, he chose to violate the terms of his release and turned north to Lula.

Just like his previous willful violation, Defendant acknowledges the violation but provides the same tired excuse that he did not have any intent to act in an improper manner. Defendant submits that he was just lost, but that is clearly a lie belied by Defendant's familiarity with the area. As the Court correctly noted, no one ends up in Lula, Georgia without meaning to go there. Thus, Defendant arrives in Lula, Georgia for some illegitimate reason.

The Court also knows, not just from the allegations in the Indictment but from the evidence in the record, that Defendant is a predatory child molester: he molested many boys in the Czech Republic; he traveled to Russia to molest boys; he e-mailed with a fellow pedophile about traveling to Russia to molest boys; he manufactured child pornography in the United States and abroad by taking pictures of the children he molested, including the victim who testified at the bond hearing; and he possessed child

---

[2] Defendant moved to a new address, with Magistrate Baverman's approval, several months ago. From the victim's high school, Defendant's residence is also south on Old Cornelia Highway.

pornography on his computer.[3]  If a predatory child molester is roaming out and about for illegitimate reasons and is seen less than a mile from a previous victim's house and many miles away from Defendant's own home, then Defendant is a real and credible danger to the community.

Defendant claims that he "candidly reported the incident to his pretrial services officer before the government moved to revoke, thus demonstrating that he did not knowingly and willfully violate the conditions of his release." (Doc 193-4). Perhaps Defendant forgot that his improper excursion was raised to the Court at the December 19, 2005 bond modification hearing and that Pretrial Services Officer Chris Colquitt testified that Defendant only came up with his "lost in my own backyard" excuse in early January 2006.  Contrary to defense counsel's claim, Defendant's actions are not "candid reporting" but instead manipulative and calculating *post hoc* excuses for, yet again, violating the terms of his bond.


III. Danger to the Community

Over the course of his time on house arrest, Defendant has complained mightily that "[h]is conditions of confinement, ..., are

---

[3] Defendant admits to owning computers that contained child pornography. (Doc 38-1).

-5-

more draconian than if he were in the county jail, other than the immediate surroundings being somewhat more tolerable." (Doc 77-2; see also Doc 66-2; Doc 170-13 (Defendant claims that his conditions of bond were "entirely punitive, excessive and unnecessary.")). Defendant conveniently ignores the fact that he agreed to these terms so that he could stay in his million-dollar house, replete with swimming pool, televisions and views of Lake Lanier, instead of going to jail for his bond violations.  While Defendant claims the conditions of his release are draconian, he cannot abide by them.  If Defendant cannot abide by terms of bond that he finds so restrictive, how can the imposition of additional restrictions secure the safety of the community?

Defendant has now twice been found in willful violation of his bond.  The only reasonable, logical alternative to secure the safety of the community is to remand Defendant to the custody of the United States Marshal's Service pending his trial.  How many more chances does he get and, what happens the next time he violates the conditions of his bond?  Defendant first violated by calling juvenile boys; he next violated by traveling to a victim's town at a time when the victim was walking about town after school. With these escalating violations, what happens next?  Does he molest the victim in Lula again?  Does he visit the local high school where he previously picked up the Lula victim?  Perhaps this

time he finds a new victim in a supermarket, at the gas station, in the neighborhood?

Defendant argues that he is not a danger to the community because he never exited his car while in Lula, Georgia.  But this begs the question of why he was there in the first place. Moreover, the town of Lula and all the boys of north Georgia should consider themselves lucky that Defendant was seen, this time, violating his bond and the Government was notified.  Of course, if Defendant is so brazen as to violate the terms of his "draconian" bond and so calculating as to claim he was simply lost, one is left to wonder how many times in the past Defendant has departed defense counsel's office early and veered off his return trip to Gainesville.

The citizens of the Northern District of Georgia should not be left wondering how many times Defendant has violated his bond or what happens the next time he does so.  For their protection, and based on Defendant's second violation of the terms of his pretrial release, no reasonable conditions of bond will secure the safety of the community against the danger of this predatory child molester. Thus, the Court should deny Defendant's motion to reconsideration and keep Defendant where he is not a threat to others.

This 14th day of February, 2006.

                              Respectfully submitted,

                              DAVID E. NAHMIAS
                              UNITED STATES ATTORNEY

                                  /s/ *Aaron M. Danzig*

                              AARON M. DANZIG
                              ASSISTANT U.S. ATTORNEY

                                  /s/ *Robert C. McBurney*

                              ROBERT C. McBURNEY
                              ASSISTANT U.S. ATTORNEY
                              Georgia Bar No. 481070

                              600 U.S. Courthouse
                              75 Spring Street, SW
                              Atlanta, Georgia 30303
                              (404) 581-6012
                              Ga. Bar No. 205151

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the people listed below a copy of the foregoing document by electronic delivery:

>Donald F. Samuel, Esq.
>W. Charles Lea, Esq.
>Garland, Samuel, Loeb & Lea, P.C.
>3151 Maple Drive, NE
>Atlanta, Georgia 30305

This 14th day of February, 2006.

>_____/s/ Aaron M. Danzig_____
>AARON M. DANZIG
>ASSISTANT UNITED STATES ATTORNEY