IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.           ) | CASE NO. 1:04CR249 |
| ) | |
| GREGORY C. KAPORDELIS,    ) | |
| ) | |
| Defendant.      ) | |

**MOTION TO EXCLUDE EVIDENCE
OFFERED PURSUANT TO RULE 404(b)
RELATING TO EVENTS IN PRAGUE, CZECH REPUBLIC
AND TO EVENTS UNRELATED TO THE
CHARGED OFFENSES**

Defendant Gregory Kapordelis moves the court to enter an order barring the government from introducing evidence that it belatedly revealed to the defense regarding events that allegedly occurred in Prague, Czech Republic. There are three reasons for excluding this evidence:

(1) The disclosure to the defense occurred on April 18, 2006, approximately six months after the court-imposed deadline for disclosing Rule 404(b) evidence.[1]

---

[1] In her Report and Recommendation dated October 28, 2005, Magistrate Brill ordered that all Rule 404(b) evidence should already have been provided (Doc. # 166, page 4).

1

(2) The defendant has no ability whatsoever to investigate or rebut the evidence that the government seeks to introduce, because of the late disclosure.

(3) The evidence is not admissible under Rule 404(b) because:

    (a) the evidence is not relevant to the charged offenses;

    (b) the government cannot meet the threshold burden of proving that the alleged Rule 404(b) events even occurred, as alleged;

    (c) the prejudice of offering the tantalizing evidence, in its untested form – that is, without the defendant having any ability to confront the evidence or rebut the allegation – far outweighs any probative value in ascertaining the truth of the charged offenses.

The government's pleading notifying the defense of potential Rule 404(b) evidence was filed on April 17, 2006.  The Magistrate had previously directed the government to notify the defense of its intended Rule 404(b) evidence by October, 2005.  The Magistrate had good reason to set the date that far in advance: the evidence, as the Magistrate predicted, would involve events that allegedly occurred in a foreign country where the defense would be substantially hampered in its investigation.  Moreover, if the events occurred in a country with which the USA has a reciprocal discovery treaty, the invocation of those provisions could take several months.  Thus, if there

were witnesses in the foreign country that could offer probative evidence for the defense, it could take months to schedule depositions in the foreign country.

The government has not offered any reason for its failure to comply with the Magistrate's scheduling order. In fact, the discovery furnished to the defense was in the possession of the government in July of 2005, three months *before* the deadline. Yet, the government simply disregarded the Magistrate's Order and withheld the information from the defendant until six months *after* the deadline. Unless the government did so *ex parte* – which is obviously a possibility – the government made no effort to obtain an extension of time, or to secure a protective order.

Therefore, because the government has violated the timetable set forth by the Magistrate, and thus violated the Rule itself, which requires timely notice, the evidence should be barred without further inquiry. *See United States v. Carrasco*, 381 F.3d 1237 (11th Cir. 2004).

Apart from the *prima facie* violation of the Magistrate's Order, the procrastination in revealing the information to the defense has resulted in the complete inability of the defense to meet this evidence, to investigate the truthfulness of the allegations, or to secure rebuttal evidence.

The evidence has been offered by three newly-revealed witnesses: Dr. Rommel Bryant; Chris Williams; and Lester Andrews. The testimony of a fourth witness, Kris Briscoe, was previously provided to the defense, but was never identified as being Rule 404(b) evidence.

The evidence offered by these witnesses relates to several different trips that Greg Kapordelis took to Prague, Czech Republic several years ago. Though specific dates are not provided as to when these events occurred, Williams, Bryant, and Andrews all testify about separate events in Prague when Dr. Kapordelis is alleged to have either engaged in sexual activity with a minor, or with a young man in exchange for money. The identity of the sexual partner remains unknown. The age of the alleged partner is only a matter of guesswork; whether money was actually provided, or was provided in exchange for sex, is at most conjectural. There are vague references to locations of these events. Each of the witnesses identifies a specific bar, or nightclub in Prague where he alleges that Dr. Kapordelis met his sexual partner. Each of the witnesses states that he was personally present at the bar and, in some instances in the hotel room, or apartment, but (of course) each of the witnesses adamantly denies engaging in any impropriety whatsoever. Indeed, each claims to have been "shocked" by the behavior he witnessed. Though there are individual differences in their stories, each

acknowledges that his "shock" did not discourage him from making further trips to Prague with Dr. Kapordelis, or at least staying in touch with him in the next few years.

None of these allegations was known to the defense prior to April 18, 2006. Bryant's identity was vaguely revealed to the defense in connection with an alleged email correspondence that he had with Dr. Kapordelis in later years, focusing on travels to Russia. But Bryant's actual identity was never revealed to the defense, his location was never revealed, his knowledge of activities in Prague was never revealed and the government's intention to offer him as a Rule 404(b) witness was never revealed.

One of the witnesses who is being offered under Rule 404(b) is Kris Briscoe. His statement was previously provided to the defense, but it was never revealed to the defense that he would be offered to testify about Rule 404(b) evidence. The exact nature of his testimony as it relates to Prague, moreover, is still a mystery (only one or two sentences in his rather lengthy "report of interview" relate to Prague).

In short, had these events allegedly occurred in the United States, there would be months of investigative work required: finding the supposed sexual partners; interviewing other patrons at the nightclub; interviewing the owners and managers of the nightclub; conducting background

investigations of these witnesses each of whom claims to be "lily white" in his behavior, while witnessing (but never reporting to authorities, of course) various criminal acts by Dr. Kapordelis.  Any lawyer who failed to undertake these most elementary investigative steps would be branded ineffective.

    Yet, none of this can be done in this case, because the events occurred thousands of miles away in another continent where the people do not speak English, where the defense knows of no investigators, and where the Compulsory Process Clause of the Constitution is as efficacious as the Local Rules of the Atlanta traffic court. In short, the government's violation of the Magistrate's disclosure order has gained the government an enormous tactical advantage: the government will introduce the evidence and the defendant is powerless to refute the allegations, or seriously impeach the witness.  *See generally United States v. Perez-Tosta*, 36 F.3d 1552 (11th Cir. 1994) (in evaluating remedy for tardy disclosure, the court must gauge the prejudice to the defense in being able prepare and rebut the allegations).

    With regard to admissibility, it should be noted that if the court were to bifurcate the trial and only proceed on the so-called domestic counts, the probative value of the sexual misconduct in Prague is far out-weighed by its prejudicial effect.  Whether a person pays an eighteen year old prostitute for

6

sex in Prague is not particularly relevant to the person's possession of child pornography in the United States. Even a sexual relationship with a minor in Prague is only dimly relevant to possession of child pornography in the United States. None of the proffered Rule 404(b) evidence from Williams, Bryant or Andrews has any relationship to the possession or production of child pornography. (In fact, in the statements provided by the government, the witnesses do not state that they observed any illegal pornography on Kapordelis' computer: the only reference to having observed anything on the computer relates to adult pornography). Thus, the proffered evidence fails the relevancy test embodied in Rule 404(b). *United States v. Matthews*, 341 F.3d 1296, 1312 (11th Cir. 2005); *United States v. Baker*, 432 F.3d 1189, 1204-1205 (11th Cir. 2005) ("If intent is undisputed by the defendant, Rule 404(b) evidence is of negligible probative weight compared to its inherent prejudice and is therefore uniformly inadmissible"); *United States v. Williams*, 816 F.2d 1527 (11th Cir. 1987) (if extrinsic offenses are of a heinous nature and are likely to sway the jury irrevocably to a decision of guilty, then those acts must be excluded). *See also United States v. Hubert*, 138 F.3d 912 (11th Cir. 1998); *United States v. Mills*, 138 F.3d 928 (11th Cir. 1998); *United States v. Lail*, 846 F.2d 1299 (11th Cir. 1988); *United States v.*

*Chavez*, 204 F.3d 1305 (11th Cir. 2000). *See generally Rule 403, Fed.R.Evid.*

The government's evidence also fails to satisfy the threshold burden of proving that the evidence is admissible under Rule 404(b) because it is little more than guesswork being offered by these witnesses about the actual conduct in which Dr. Kapordelis was allegedly engaged. In short, the government cannot even offer satisfactory proof that the "bad act" even occurred. These witnesses cannot seriously claim to know the identities, and certainly not the ages, of any sexual partners with whom Dr. Karpodelis was engaged. Whether Dr. Kapordelis was having sex with a person "in the next room" may seem likely, but "seem likely" is not the proper standard for admitting evidence. Thus, the government cannot establish that (a) Dr. Kapordelis actually had sexual relations with any of the people with whom the government claims that he had sex; (b) the sexual partner was paid; (c) that the sexual partner was any particular age. *See generally United States v. Veltmann*, 6 F.3d 1483 (11th Cir. 1993); *United States v. Utter*, 97 F.3d 509 (11th Cir. 1996); *United States v. Vitrano*, 746 F.2d 766 (11th Cir. 1984).

Of course, if the court chooses to proceed with the trial with all counts – as the defense fervently advocates – then the scenario is somewhat different. It is obvious to everyone at this point that a trial on the Russian

8

counts would have to be delayed beyond June 5.  This delay would enable the defense to investigate and prepare the defense to the Rule 404(b) Prague allegations as well.  Thus, if the court were to keep the indictment intact, this Motion might well be rendered moot.  Not only would the timeliness issue be resolved, but the relevancy issue would also tilt in favor of admission.  After all, the Russian charges involve extremely similar conduct as the Prague allegations:  that is, sexual relations with minor males.  At least with regard to the Russian allegations, the supposed "victims" are identifiable people – people who now adamantly denied that any improper sexual conduct occurred.

The defendant also moves to exclude the proposed Rule 404(b) evidence relating to Deno Cantos.  This proposed testimony involves an alleged sexual relationship between Dr. Kapordelis and a young man (not under the age of 16), that occurred more than fifteen years ago.  This evidence does not involve sexual misconduct with a minor.  Because of the dissimilarity of the conduct, coupled with the "age" of the events, the Court should exclude this evidence, as well, because of the probability that it will have an unfairly prejudicial impact on the real issues that are the subject of the trial.

Finally, to the extent that the government's Rule 404(b) motion seeks to authorize the admission of other evidence (such as other acts of sexual misconduct, or possession of other unidentified pornography) the defense objects on the basis of late disclosure and lack of probative value.

## **CONCLUSION**

If the court declines to bifurcate the charges in the indictment, the defendant will tentatively withdraw this motion and believes that given adequate time to prepare, the Rule 404(b) evidence may be admissible.

If the court bifurcates the trial, however, the defendant urges the court to exclude *all* evidence relating to events in Prague, Czech Republic, regardless of the source of the information; and to exclude *all* evidence offered by Rommel Bryan, Chris Williams, Lester Andrews and Deno Cantos.

                                  Respectfully submitted,

                                  GARLAND, SAMUEL & LOEB, P.C.

                                  DONALD F. SAMUEL
                                  Ga. State Bar #624475

3151 Maple Drive, NE
Atlanta, Georgia  30305
404-262-2225
Fax 404-365-5041
dfs@gsllaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **CASE NO. 1:04CR249** |
| ) | |
| GREGORY C. KAPORDELIS, ) | |
| ) | |
| **Defendant.** ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing *Motion to Exclude Evidence Offered Pursuant to Rule 404(b) Relating to Events in Prague, Czech Republic and to Events Unrelated to the Charged Offenses* to the following by electronic filing:

> Aaron Danzig
> Robert McBurney

This 25th day of April, 2006.

_____
DONALD F. SAMUEL
Ga. State Bar #624475

11